PER CURIAM.
Arthur O’Dell appeals an order of the judge of compensation claims denying the compensability of his bladder cancer, pulmonary emphysema, and pneumothorax, on grounds the evidence failed to establish that his medical problems grew out of his employment. We affirm.
When he first worked for Pan American Airways, Mr. O’Dell cleaned aircraft interiors “vacuuming, normal cleaning ... the bathrooms.” From 1975 to 1986, he worked for Pan Am in fleet service, loading and unloading passengers’ bags, and driving. He began working as a “mechanic” in 1986. His new job duties all pertained to the interior of the aircraft and included maintaining the aircraft, painting and cleaning aircraft parts, replacing seats, performing electrical work, and general maintenance. Pan American stopped doing business in December of 1991.
On October 16, 1991, his last day at work, Mr. O’Dell noticed blood in his urine. Diagnosed as having a tumor in his bladder, he was promptly operated on: He had a cys-tourethroseopy and transurethral resection of the bladder. On January 9, 1992, Mr. O’Dell underwent a cystoprostatectomy and creation of a neo-bladder for a continent diversion to the urethra. On March 2, 1992, he was admitted to Cedars Medical Center with a right pneumothorax, and lung surgery was performed. He was readmitted with a recurrent right pneumothorax on March 13, 1992, and ultimately discharged on March 20, 1992. Before October of 1991, he was unaware of any pulmonary or bladder ailments.
On June 18, 1993, Mr. O’Dell filed a claim for workers’ compensation benefits. On January 18, 1996, the judge of compensation claims entered an order finding that Mr. O’Dell’s bladder cancer, pulmonary emphysema, and right pneumothorax were not com-pensable injuries attributable to his employment.
The judge of compensation claims rejected key parts of Mr. O’Dell’s testimony, explicitly finding him to be unbelievable, in part because of Mr. O’Dell’s testimony concerning chemicals he claimed to have been exposed to at work. On this topic, he was much vaguer at deposition — which was approximately a year and a half nearer to the time of his employment — than he was at the final hearing, where he testified concerning fourteen *1386 different substances. At final hearing, on cross examination, Mr. O’Dell admitted that his information about the chemicals to which he was allegedly exposed came from a friend who did not testify.
Q. Those were the only ones you mentioned in your October 23, 1993 deposition. In looking at this response to production provided us by your attorney on March 10th, 1994, about a half a year later, you’ve now got ... 14 substances to which you were exposed. Where did you get this list?
[[Image here]]
A. Well, I had a list at home.
Q. You had a list at home?
A. Yeah, what we used, and I got it off of friends that were painters.
Q. Did you know the manufacturers of any of these things or—
A. I don’t recall.
Q. How did you come up with the manufacturers at the time that you went and talked with Dr. Medero? He says that you provided him with a list of chemicals and manufacturers.
A. Well, through research.
Q. How did—
A. I had a friend that was a painter and he gave me the list.
Asked at his deposition what chemicals he had been exposed to, Mr. O’Dell answered “I can’t recall right offhand. We used MEK and Tianol.” He did not then remember the names of other chemicals to which he testified at final hearing he had been exposed. The judge of compensation claims cited two other discrepancies between his testimony on deposition and his testimony at the final hearing. In his deposition, he said that half a dozen other Pan Am employees had respiratory or bladder problems and that, although he could not recall their names, he would find them out; but at final hearing he had not a single name. Finally, although he testified at his deposition that his treating physicians connected his bladder and respiratory problems with his employment, he conceded at final hearing that their medical reports reflected no such connection.
As the judge of compensation claims noted, Mr. O’Dell relied primarily on Dr. Medero’s sometimes equivocal testimony in an effort to establish a causal connection between workplace exposure to chemicals, notably zinc chromate, and all three of his medical conditions. In assessing the evidence, the judge of compensation claims concluded that Dr. Medero’s opinions — like those of Dr. Nor-mann — lacked the necessary factual foundation. There was no evidence of any exposure to naphthylamine or benzidine. The final order found Dr. Medero’s “ultimate opinion ... speculative.”
We must defer to the lower tribunal’s determination that causation was not established. Even in an exposure case, it is not enough to show a reviewing court that a disease or condition might logically have arisen out of the employment — not that such a showing was made here. Dr. Davies testified for the employer and its insurance carrier that there was no evidence that zinc chro-mate causes bladder cancer. The judge of compensation claims was free to credit this testimony, just as he was free to disregard portions of the claimant’s testimony he found unworthy of belief, and to reject opinion testimony that lacked a necessary factual predicate.
Affirmed.
DAVIS and BENTON, JJ., concur.
ERVIN, J., concurs and dissents with opinion.